IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JORDAN POLSTON<br><br>   Plaintiff,<br><br>v.<br><br>COMMISSIONER OF CORRECTIONS, *et al.*,<br><br>   Defendants. | Civil Action No.: PX-21-0856 |

**MEMORANDUM**

Inmate Jordan Polston has filed this civil rights action pursuant to 42 U.S.C. § 1983, contending that he had been denied constitutionally adequate medical care at Jessup Correctional Institution ("JCI") following a fire at the prison. *Id*. at 2-3. Defendants moved to dismiss the Complaint or alternatively for summary judgment to be granted in their favor. ECF No. 13. The Court notified Polston of his right to respond to the motion which he has yet to do. *See* ECF No. 14.[1] The Court has reviewed the pleadings and finds that a hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons discussed below, the motion, construed as one for summary judgment, will be granted.

**I.   Background**

The Complaint avers that on June 25, 2020, a fire started in the tier where Polston was housed, and that Defendant Officer Sanusi left him in his cell for "fifteen minutes or more" causing him to inhale "toxic smoke, (ECF No. 1 at 2). Further, the Complaint alleges that Polston had not

---

[1] Polston did object to the Court having granted a brief extension for Defendants to respond to his Complaint but otherwise made no arguments responsive to Defendants' stated grounds for relief. *See* ECF No. 15.

1

received medical care and was instead taken to a "day room where he remained fighting for air" for several hours and then returned to his "smoke filled" cell. *Id.*

Defendants have submitted records which, when viewed most favorably to Polston, demonstrate that at the date and time Polston alleges to have been abandoned by Defendant Officer Sanusi, the Officer had not yet begun work, and when the Officer began his shift at 3:00 p.m., was assigned to the "night yard." ECF No. 13-2 at 5-6, 9, 13, 15. Following the fire, evacuations and medical escorts were in progress on the impacted tier beginning at approximately 3:00 p.m. and continuing through 6:00 p.m. ECF No. 13-2 at 14

The next day, medical providers examined Polston in response to a sick call. ECF No. 13-3 at 6. At that visit, Polston reported difficulty breathing earlier in the day but was "no longer having difficulty breathing." *Id.* Polston, who has asthma, also had misplaced his Alvesco pump. *Id.* at 6. Medical staff declined to issue him a replacement pump because Polston had received one just a few days prior, on June 22, 2020. *Id.* Polston was advised that in the interim, he should use his Albuterol pump. *Id.* Polston thereafter was returned to his housing unit. *Id.*

On July 15, 2020, Polston timely filed an administrative remedy procedure (ARP) grievance regarding this incident. ECF No. 13-2 at 3 (Case No. JCI-0834-20). JCI initiated an investigation during which time Polston was transferred to WCI. ECF No. 13-3 at 5. From this investigation, the Warden concluded that the ARP had been meritorious in part, because "although [] Polston was seen in medical, staff failed to get him medical care in a timely manner." ECF No. 13-2 at 2. The Warden found "no evidence" to support the claim that during the fire, he had been left in his cell "to die." *Id.*

Evidently, Polston appears to have not received the Warden's result of investigation. ECF No. 1 at 2. However, while at WCI, Polston pursued his administrative remedies such that Defendants have not challenged the claim on exhaustion grounds. *Id.* at 2-3.

## II.     Standard of Review

Defendants moved to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment to be granted in their favor under Rule 56. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Pursuant to Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court" in connection with a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56," and the parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Defendants seek summary judgment and attach record evidence beyond the four corners of the Complaint. ECF No. 13. The Court also expressly notified Polston of his right to respond to the motion. ECF No. 14. Accordingly, Polston has received ample notice that the motion may be treated as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). The Court, therefore, will construe the motion as one for summary judgment.

Summary judgment is appropriate when the movant establishes no genuine dispute as to any material fact such that he should be accorded judgment as a matter of law in his favor. Fed. R. Civ. P. 56(a). To "avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Ultimately, where the "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III. Discussion

The Complaint fronts two claims: first, that Polston had been denied constitutionally adequate medical treatment after the fire, in violation of his Eighth Amendment right to be free from cruel and unusual punishment; and second, that Defendants denied him due process under the Fifth and Fourteenth Amendments.  *Id.* at 4-5.  The Court examines each claim separately.

#### A. Denial of Adequate Medical Care

The Eighth Amendment to the United States Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  To succeed on this claim, an inmate must demonstrate that each defendant's acts or omissions amounted to deliberate indifference as to plaintiff's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).  Specifically, deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff, aware of prisoner's need for medical attention, failed to either

4

provide such care or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

"A medical condition is shown as objectively serious when it 'would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Formica v. Aylor*, 739 Fed Appx. 745 (4th Cir. 2018), *citing Gayton v. McKoy,* 593 F.3d 610, 620 (7th Cir. 2010). As to a defendant's subjective recklessness, "[t]rue subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

### 1. Commissioner of Corrections and JCI Warden

Although the Complaint names as defendants the "Commissioner of Corrections" and the Warden at JCI, no evidence reflects that either had any personal involvement in Polston's medical care following the fire. Liability under § 1983 attaches only upon a defendant's personal participation in the constitutional violation; mere "respondeat superior" or agency liability is not sufficient. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Rather, a supervisory official may be found liable for a constitutional violation only where the evidence shows: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's acts and

omissions and the injury sustained to the plaintiff as a result. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

When viewing the record most favorably to Polston, nothing supports liability as to either the Commissioner or the Warden. They simply were not directly or indirectly involved in inmate treatment following the fire. Summary judgment, therefore, is granted as to both Defendants.

### 2. Officer Sanusi

As Defendant Officer Sanusi, no evidence supports that he personally denied Polston adequate medical care. Indeed, the unrebutted record demonstrates that Sanusi had not begun work on the day of the fire until shortly after the incident took place. ECF No. 13-2 at 5-6, 9, 13, 15. Moreover, Sanusi had been assigned not to Polston's tier, but rather to the night yard. ECF No. 13-2 at 15. Accordingly, no record evidence supports that Sanusi had anything to do with the response to the fire or had any interactions with Polston that day. Summary judgment is thus granted in Defendant Sanusi's favor.

### B. Denial of Due Process

The Complaint also avers, in conclusory fashion, that the JCI Warden and the Commissioner of Corrections denied Polston due process when "based on arbitrary, capricious, and frivolous grounds failed to answer and address [his] complaint that he suffered cruel and unusual treatment…when [he] suffered smoke inhalation that aggravated his asthma condition and was not allowed medical assistance." ECF No. 1 at 3-4. To the extent Polston claims that his ARP was improperly processed and dismissed, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (discussing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994) ); *see Robinson v. Wexford*, No. ELH-17-1467, 2017 WL 4838785, at *3 (D. Md. Oct. 26, 2017) ("[E]ven assuming,

arguendo, that defendants . . . did not satisfactorily investigate or respond to plaintiff's administrative grievances, no underlying constitutional claim has been stated" because "'inmates have no constitutional entitlement or due process interest in access to a grievance procedure.'") (quoting *Booker*). If Polston's intention is to assert that Defendants had violated state policies, procedures, rules, regulations, or state law, this alone also does not provide a basis for a due process violation. *See, e.g.*, *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("[i]f the state law grants more procedural rights than the Constitution would otherwise require, a State's failure to abide that law is not a federal due process issue"). Accordingly, because the claim is not supportable in the law, nor does the evidence generate any other potential constitutional claim, summary judgment must be granted in Defendants' favor.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion, construed as one for summary judgment, is GRANTED.

A separate order follows.

/S/
_____
Paula Xinis
United States District Judge